12-4652-cr
U.S. v. Falls

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of November, two thousand thirteen.

Present:
> ROBERT A. KATZMANN,
> > *Chief Judge*,
> AMALYA L. KEARSE,
> RICHARD C. WESLEY,
> > *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                No. 12-4652-cr

LARRY FALLS, AKA T, AKA TONE,

> *Defendant-Appellant,*

MICHAEL WALKER, AKA SWABS,

> *Defendant.*

---

For Defendant-Appellant:          MURRAY E. SINGER, Port Washington, NY;
                                  Larry Falls, *pro se*, White Deer, PA.

For Appellee:                          HILARY LEY JAGER (Emily Berger, *on the brief*),
                                       Assistant United States Attorneys, *for* Loretta E. Lynch,
                                       United States Attorney for the Eastern District of New
                                       York, Brooklyn, NY.


Appeal from the United States District Court for the Eastern District of New York (Cogan, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Defendant-Appellant Larry Falls appeals from a judgment of conviction entered on November 21, 2012, by the United States District Court for the Eastern District of New York (Cogan, *J.*), convicting him, upon a jury verdict, of (1) conspiracy to distribute cocaine base and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a); (2) use of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); (3) possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and (4) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Following a hearing to determine certain facts related to Falls's sentencing, the district court found Falls responsible for a homicide as well as an attempted kidnapping and robbery, and sentenced him to a total term of imprisonment of 360 months. We assume the parties' familiarity with the relevant facts, the procedural history, and the issues presented for review.

Falls first argues that the evidence supporting his conviction on the two firearm counts is legally insufficient because the conviction relied on Falls's uncorroborated statements in wiretapped telephone calls and in a post-arrest statement. Generally, "an accused may not be convicted on his own uncorroborated confession" or admission, and the trustworthiness of such statements must be established by "substantial independent evidence." *United States v. Bryce*,

208 F.3d 346, 354 (2d Cir. 1999) (quoting *Smith v. United States*, 348 U.S. 147, 152 (1954), and

*Opper v. United States*, 348 U.S. 84, 93 (1954), respectively). However, the Second Circuit has

divided such statements into two categories: "those that bear insufficient indicia of reliability as

proof of the defendant's commission of the offense to support a finding of guilt beyond a

reasonable doubt, and those that, considering the nature and the context of the defendant's

words, demonstrate his commission of the offense so reliably that, without need of other

supporting evidence, they can support a finding of guilt beyond a reasonable doubt." *Opper*, 348

U.S. at 355. While statements in the former category require corroboration through substantial

independent evidence, "[s]tatements in the latter category may be considered self-corroborating."

*Id.*

Falls claims that the recorded conversations presented at trial were insufficiently reliable

to be self-corroborating and were not corroborated by substantial evidence sufficient to establish

their reliability. We address the statements admitted at trial in turn. First, in a series of calls

between Falls and his brother, Harold Falls, Harold told Falls that an associate was trapped in a

building because the associate would be shot if he came out. Falls offered to help their associate

and stated that if he saw anyone outside the building, he would "get the flame throwers" and that

he had "a whole bunch of stuff" in his house. App. 499–500. In a second call about a half-hour

later, Falls told his brother that he had "already dropped them off." *Id.* at 502–03. Looking at

these conversations, the district court found that, based on their nature and context, these

statements were self-corroborating, reasoning:

> Defendant's brother called him asking for help, which defendant offered. Had
> defendant lied about either going to investigate or about possessing firearms, he
> would have potentially risked his own life as well as the lives of his brother and
> his friend. And unlike in *Bryce*, there is no ambiguity in defendant's statements.

3

> They do not suggest that he could obtain firearms from a third-party if necessary; they outright demonstrate that he currently had firearms and that he had gotten them prior to investigating the area.

*Id.* at 543–44.

While Falls challenges this conclusion, we are persuaded by the district court's reasoning and note that Falls has failed on appeal to identify any ambiguity in these statements that might imply a plausible, non-culpable explanation, such that the statements should be deemed unreliable. *Cf. Bryce*, 208 F.3d at 356 (finding uncorroborated statements insufficiently reliable to support a cocaine possession charge where there was a likelihood that the defendant was expressing his ability to obtain cocaine on the relevant dates, rather than his possession of cocaine at the time of the statements). Therefore, we find that Falls's statements to Harold Falls were sufficiently reliable to be admissible without corroboration.

Falls also challenges the sufficiency of a series of recorded conversations and post-arrest statements relating to his purchase of firearms from his cousin, Ronnie Scott. On August 17, 2009, Falls and Scott discussed meeting at a rest stop in Maryland to conduct the transaction. At trial, the government presented the testimony of an FBI agent who conducted surveillance on Falls as he drove to Maryland that same day. The agents noticed that Falls's driving behavior in Maryland suggested an attempt to avoid surveillance, and they were concerned that their presence might have been noticed; they thus ended their surveillance before Falls met up with anyone. Additionally, the government played a recording from the following day, August 18, 2009, in which Falls told "Chuck," a customer of his drug business, that he "got some new things" and that he was "ready to start trouble." Gov't App. 67. In another recorded call from August 24, 2009, Scott told Falls that he would try to get him "one more." *Id.* at 72. Finally, in a

4

post-arrest statement, Falls said that he purchased two firearms from Scott in Maryland, and that Falls had sold one of the guns to an individual named "Ty."[1]

In denying Falls's motion for acquittal, the district court found that the fact that the FBI agents observed Falls driving "to the Maryland rest stop corroborated the telephone conversations he had with Scott . . . and defendant's post-arrest statements . . . ." App. 544. We agree. The agents' observation that Falls made a trip to Maryland on the same day he discussed it with Scott, as well as their observations of Falls's surveillance-conscious driving behavior, provided at least some degree of corroboration of Falls's statement that he intended to purchase firearms from Scott in Maryland, even though the agents felt constrained to cease any surveillance before seeing any firearm transaction occurring. That this transaction actually occurred is further corroborated by Falls's post-trip statements to Chuck that he "got some new things," by Scott's comment on August 24 that he would try to get Falls "one more," and by Falls's own post-arrest statement that he purchased two guns from Scott in Maryland. This combination of statements and other evidence thus provides corroboration for one another, such that Falls's statements relating to the Maryland gun purchase were sufficiently reliable to be admissible. To the extent Falls takes issue with other statements admitted at trial, we have considered his contentions and reject them as meritless.[2]

---

[1] Prior to his August 17 trip, Falls had discussed with Buck, his drug supplier, selling a gun to an individual named Tyhiim.

[2] Falls alternatively argues that his conviction on count two, use of a firearm in furtherance of a drug-trafficking crime, should be overturned because there was no evidence that he possessed the firearm "in furtherance of a drug-trafficking crime." We disagree. There was sufficient evidence for a reasonable jury to infer that Falls possessed firearms at least in part to protect and promote his narcotics-trafficking business, as many of the recorded statements either were made to individuals involved in his drug business or implicated subject matter related to that business.

5

Next, Falls argues that the district court erred in admitting into evidence the recordings of the calls between Falls and Kim Weston, and Falls and Harold Falls. Falls contends that the admission of these calls violated Rules 402 and 403 of the Federal Rules of Evidence. "A district court's evidentiary rulings are subject to review for abuse of discretion." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011). In reviewing a Rule 403 determination, "[s]o long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008) (per curiam) (quoting *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006)) (alterations omitted).

With respect to Rule 402, Falls argues that the statements in these calls do not relate to the sale of drugs or the purchase or the use of firearms in relation to a drug crime and therefore are irrelevant to any issue at trial. We agree with the district court, however, that these conversations were highly relevant specifically because they "show the use of guns in connection with drug trafficking" and because these conversations were "by far the most direct evidence tying the guns to the drugs." App. 271.

Falls also argues that the introduction of these statements was erroneous because the statements' "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. In balancing the probative value of evidence against the risk of unfair prejudice, "[t]he question is not whether the evidence was suggestive of guilt[,] . . . but rather, whether 'it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifie[s] its admission into evidence.'" *Massino*, 546 F.3d at 132 (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir.1980)). In the challenged statements, Falls

manifested an intention and willingness to commit various acts of violence. Falls again claims that these statements have only minimal, if any, relevance, while the violent nature of these statements unfairly excited the jury's emotions against him, and they were therefore unduly prejudicial.

At trial, however, the district court expressly considered both the probative value of these statements, which the court found to be significant, and the risk of undue prejudice, which the court found to be diminished by the "inherent violence" in the use of guns as part of a drug conspiracy, suggesting that Falls's expressions of willingness to resort to violence would not unduly change the jury's view of the crime itself. App. 271. The district court even gave a limiting instruction to the jury, stating with respect to these tapes that the jury should "[k]eep in mind that Mr. Falls is not charged with any acts of violence, nor any propensity to commit violence" and that the jury should consider them "only . . . in connection with determining whether the government has met its burden of proof to prove the defendant guilty beyond a reasonable doubt of the charges here, not anything having to do with violence." *Id.* at 280. Thus, it is clear that the district court "conscientiously balanced" these competing concerns, and its conclusion was neither arbitrary nor irrational. *See Massino*, 546 F.3d at 132. Accordingly, we find that the district court did not abuse its discretion in admitting these tapes into evidence.

As to the third issue on appeal, Falls argues that the jury did not determine whether the government proved that Falls had conspired to distribute or possessed with intent to distribute marijuana, and therefore that he was never convicted of the exact crime charged in count one of the indictment in violation of the Fifth Amendment. Specifically, count one charged that Falls "knowingly and intentionally conspire[d] to distribute and possess with intent to distribute one or

7

more controlled substances, which offense involved (a) 50 grams or more of a substance containing cocaine base . . . *and* (b) marijuana . . . ." Gov't App. 15–16 (emphasis added). At trial, the district court instructed the jury that, in order to find Falls guilty on count one, it had to find that Falls conspired to distribute or possess with intent to distribute "a" controlled substance, App. 426, and that they must find that he participated in the alleged conspiracy "with knowledge of the unlawful purpose charged in the indictment, that is, to distribute or possess with intent to distribute cocaine base *or* marijuana," *id.* at 429 (emphasis added). Additionally, the verdict sheet asked with respect to count one whether "the government prove[d] beyond a reasonable doubt that . . . the defendant conspired to distribute or possess with intent to distribute cocaine base *or* marijuana," and then whether the conspiracy involved 50 grams or more of cocaine base, both of which the jury answered in the affirmative. *Id.* at 479 (emphasis added). Thus, Falls argues that to the extent that the verdict form altered the factual allegations in the indictment by making count one disjunctive (cocaine *or* marijuana) rather than conjunctive (cocaine *and* marijuana), the verdict form constitutes a constructive amendment of the indictment in violation of his Fifth Amendment right to be tried on the indictment voted by the grand jury.

However, it is well established that "[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *United States v. Miller*, 471 U.S. 130, 136 (1985). Accordingly, "[w]here there are several ways to violate a criminal statute, . . . [f]ederal pleading requires . . . that an indictment charge in the conjunctive to inform the accused fully of the

8

charges," *United States v. McDonough*, 56 F.3d 381, 390 (2d Cir. 1995) (internal quotation marks omitted) (second ellipses in original), and "[a] conviction under such an indictment will be sustained if the evidence indicates that the statute was violated in any of the ways charged," *id. See also United States v. Mejia*, 545 F.3d 179, 207 (2d Cir. 2008) ("[A]lthough the Indictment alleged that MS–13 engaged in both acts and threats of murder *and* narcotics trafficking [which was not proven], Appellants' conviction under that indictment was proper because the jury found that the evidence indicated that the statute was violated in the other way charged." (internal quotation marks and brackets omitted)).

Here, a conviction on count one could be supported by a finding that Falls conspired to distribute or possess with intent to distribute *either* at least 50 grams of cocaine base—which the jury explicitly found—*or* an unspecified amount of marijuana (or both). Therefore, under *Miller*, Falls's right to a grand jury indictment was not violated by the district court's use of the disjunctive in the jury instructions and the verdict sheet. To the extent that Falls argues that the district court's occasional use of the word "and," such as when it read the indictment, could have confused the jury, we are skeptical that any such confusion occurred given the clear language of the verdict form and the district court's generally consistent use of "or." Accordingly, we reject Falls's Fifth Amendment challenge to his conviction on count one.

Finally, Falls argues that his case should be remanded for resentencing because there was a lack of credible evidence to support the district court's finding that Falls was responsible for the murder of Dwayne Scott and for conspiring to kidnap and rob Marsha Palmer. "[D]isputed facts relevant to sentencing . . . need be established only by a preponderance of the evidence," *United States v. Ruggiero*, 100 F.3d 284, 290 (2d Cir. 1996) (internal quotation marks omitted),

9

and "[a] district court's factual findings at sentencing may not be overturned unless clearly erroneous," *id.* at 291–92 (internal quotation marks omitted). "So long as the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *United States v. Reilly*, 76 F.3d 1271, 1276 (2d Cir. 1996) (internal quotation marks omitted).

With respect to the murder of Dwayne Scott, Falls contends that the testimony of Harvey Parrish, Falls's alleged co-conspirator and the primary witness for the government at the sentencing hearing, was insufficiently reliable to establish Falls's involvement in the murder because Parrish repeatedly changed his story, he was disbelieved by the government on certain points, and his testimony was at times inconsistent with the other evidence presented at the hearing. However, Parrish's testimony was corroborated in large part by various pieces of evidence admitted at the hearing: co-conspirator Chris Smith's statements to investigators; police reports describing the crime scene; other witnesses' statements to the police; cell phone tower data that confirmed the path and timing that Parrish described Falls, Smith, and him as taking on the night of the murder; and Falls's own statement that he was with Parrish and Smith that night. Although there were some inconsistencies between Parrish's testimony and some of the other evidence, the district court fairly found that those inconsistencies paled in comparison to the consistency of the government's evidence on the whole, especially given the relatively low preponderance-of-the-evidence standard that applies. Furthermore, while the history of Parrish's shifting statements to agents over the course of their investigation might provide cause to doubt his credibility, such concerns were brought to light at the hearing and the district court expressly

10

found Parrish credible at the hearing. We see no basis to overturn that determination. Accordingly, because the district court's account is at the very least "plausible in light of the record viewed in its entirety," *Reilly*, 76 F.3d at 1276, we find that the district court did not clearly err in finding Falls responsible for the murder of Dwayne Scott.

As for the attempted robbery and kidnapping of Marsha Palmer, Falls argues that the wiretapped conversations on which the district court's finding was based demonstrate that he did not intend to kidnap Palmer; rather, he and others merely sought to find out where Palmer lived so that they could break into her apartment, with the sole goal of stealing money they believed was kept there. Falls claims that any discussion of harm to Palmer was just "men blowing smoke." The district court rejected this interpretation at sentencing and found that, although the main object of the conspiracy was attempted robbery, kidnapping was nonetheless a part of the conspiracy. Given Falls's recorded statements that he might "just knock [Palmer] out" and that he should "go over there right now and tie her up," and that if Palmer were to go near a car, they could take her,  App. 771–73, we cannot say that the district court clearly erred in finding that the conspiracy to rob Palmer also included kidnapping as a component. Therefore, we reject Falls's arguments regarding his sentencing hearing in their entirety.

We have considered Falls's remaining arguments, including the argument in his *pro se* submission that his sentence violates the rule articulated in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

11