**UNITED STATES of America Appellee,**

v.

**Ewan BRYCE, also known as Ian, Defendant–Appellant,**

**Darren Johnson, also known as D–Nice, also known as D, Defendant.**

No. 1365, Docket No. 98–1492

United States Court of Appeals, Second Circuit.

Argued: March 3, 1999

Decided: Aug. 24, 1999

As Amended on Denial of Rehearing Jan. 19, 2000.

As Amended March 7, 2000.

John R. Williams, New Haven, CT, for Defendant–Appellant.

David A. Ring, Assistant United States Attorney, Hartford, CT (Stephen C. Robinson, United States Attorney for the District of Connecticut, on the brief), for Appellee.

Before: JACOBS and SOTOMAYOR, Circuit Judges, and SAND, District Judge.*

JACOBS and SOTOMAYOR, Circuit Judges:

Ewan Bryce appeals from the judgment of the United States District Court for the District of Connecticut (Chatigny, *J.*) convicting him, after a jury trial, of (i) conspiracy to possess with intent to distribute, and to distribute, cocaine (in violation of 21 U.S.C. § 846), and (ii) possession with intent to distribute, and distribution of, cocaine (in violation of 21 U.S.C. § 841(a)(1)). We find that the government's evidence was insufficient to prove that Bryce possessed or distributed cocaine "[b]etween on or about August 5 and August 6, 1997," the period specified in the indictment. In an opinion issued on August 24, 1999, we reversed the judgment insofar as it convicted Bryce of possession and distribution, affirmed the judgment as to the con-

---

* The Honorable Leonard B. Sand of the United States District Court for the Southern District of New York, sitting by designation.

spiracy count, and remanded the case to the district court for further proceedings. Without a change in the terms of the mandate, we now amend our previous opinion.

## BACKGROUND

In 1997, federal law enforcement officers in Connecticut conducted surveillance of several persons suspected of narcotics trafficking, including the appellant, Ewan Bryce, and his co-defendant, one Darren Johnson. On August 5 and 6, 1997, agents intercepted and recorded a number of telephone conversations, eight of which are relevant to this case: seven calls between Bryce and Johnson ("the Bryce–Johnson tapes"), and one between Johnson and another individual, Edwin Gomez ("the Johnson–Gomez tape").

During their conversations, Bryce and Johnson used guarded and coded phrases to arrange a transaction in which Bryce would sell powder cocaine to Johnson for $22,500 per kilogram.[1] In their initial call on August 5, Bryce claimed to possess a quantity of what he called "straight." Johnson expressed interest in buying some of this "straight," and Bryce told Johnson to call him back later that night, presumably to arrange a meeting. But when Johnson called Bryce's cellular phone, there was no answer.

In a call early the next morning, August 6, Bryce told Johnson that he had already "let off" "like 6 of 'em ... at 22–5." Approximately three hours later, Johnson telephoned Gomez and informed him, in less cryptic language, that Bryce was selling "straight powder" for "deuce deuce" and had "offed 7 of 'em yesterday [August 5]." Johnson and Gomez expressed concern that the price being quoted would depress the price in other transactions.

After discussing matters with Gomez, Johnson called Bryce back and said he would buy "two," to which Bryce responded: "Okay. Alright I'm gonna, um, call you back then." Two minutes later, before Bryce could return Johnson's call, Johnson called Bryce again and told him that he would actually buy more than two, so long as Bryce was indeed selling "straight." They agreed to meet at Bryce's home in fifteen minutes. That meeting apparently never happened, however, because Bryce called Johnson several hours later to say that he really only had "one" left, and that he did not "really wanna get rid of this one," but Johnson (by now quite put out) pleaded with Bryce to sell the "one" to him. Reluctantly, Bryce agreed, and they arranged to meet later that day. It is apparent that this meeting also never happened, because Johnson called Bryce on August 11 and asked him whether he still had "it." Bryce said he did, and they again agreed to meet.

On August 26, 1997, federal agents arrested Johnson and another individual, one Michael McCausland. The next day, Bryce terminated the service on his pager; less than a month later, he began using a new cellular telephone. Soon thereafter, Bryce was also arrested.

Bryce and Johnson were charged in a two-count indictment. Count One alleged that the two conspired together and with others to possess with intent to distribute, and to distribute, cocaine in violation of 21 U.S.C. § 846; Count Two alleged that between, on, or about August 5 and 6, 1997, Bryce possessed with intent to distribute, and distributed, cocaine in violation of 21 U.S.C. § 841(a)(1).

A jury convicted Bryce on both counts.[2] The district court then sentenced Bryce to

---

1. In his conversations with Johnson, Bryce avoided telltale words and phrases such as "powder," "cocaine," or "$22,500." However, because we view the evidence in the light most favorable to the government, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Diaz*, 176 F.3d 52, 89 (2d Cir.1999), we con-

strue his statements in this manner based upon (i) the trial testimony of a "drug conversation expert" and (ii) the words Johnson and Gomez used to describe Bryce's statements.

2. Johnson did not stand trial with Bryce because he had previously entered a guilty plea in a related case.

124 months of imprisonment on each count (to be served concurrently) and five years of supervised release, plus a fine and an assessment.

## DISCUSSION

■ Bryce challenges his convictions on several grounds: (i) that the district court erred in admitting certain hearsay evidence, *see infra* Section I; (ii) that the evidence presented at trial was insufficient to establish guilt under Count Two of the indictment (charging him with possession with intent to distribute, and distribution, of powder cocaine), *see infra* Section II; (iii) that the government procured testimony in violation of the federal anti-bribery statute, 18 U.S.C. § 201(c)(2) (1994); and (iv) that the government's exercise of a peremptory challenge violated Bryce's

right to equal protection. We reject the last two arguments in the margin.[3]

### I

■ Bryce challenges his conviction on the ground that the district court erred in admitting certain hearsay evidence—specifically, the Johnson–Gomez tape, on which Johnson repeats Bryce's claim that he has cocaine for sale and has already distributed some to others. The district court admitted the tape pursuant to the catch-all exception to the hearsay rule, Fed.R.Evid. 807,[4] which permits admission of hearsay if (i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse par-

3. Bryce contends that the admission of the testimony of a cooperating witness (McCausland) violated the federal anti-bribery statute because the testimony was given pursuant to a cooperation agreement that promised McCausland leniency in his own criminal proceeding. We have recently held that this statute does not apply to the United States or to any federal prosecutor acting in his or her official capacity. *See United States v. Stephenson*, 183 F.3d 110, 118 (2d Cir.1999).

Bryce also claims that the district court erred in allowing the government to use one of its peremptory challenges to strike the only African–American member of the prospective jury pool (Juror # 33). *See Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986) (Equal Protection Clause forbids exercise of peremptory challenges against potential jurors solely on account of race or assumption that jurors of defendant's race will be unable to consider the government's case impartially). The district court concluded, however, that the government exercised its strikes for permissible, race-neutral reasons. We review that conclusion for clear error. *See United States v. Taylor*, 92 F.3d 1313, 1326 (2d Cir.1996) (citing *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991)). After Juror # 33 was excused, the district court conducted a lengthy voir dire of the Assistant United States Attorney, who explained that the primary motivation for the challenge was the age of Juror # 33 (19 years old), which suggested her lack of life experi-

ence. Bryce does not dispute that Juror # 33 was the youngest prospective juror in the pool, that all other young prospective jurors were similarly struck, regardless of race, and that the youngest juror ultimately selected was 41 years old. In light of these facts, the district court's decision that the peremptory challenge was race-neutral—made after evaluating the prosecutor's credibility firsthand—was not clearly erroneous.

4. Rule 807 states:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.
Fed.R.Evid. 807.

ty. *See id.; Parsons v. Honeywell, Inc.,* 929 F.2d 901, 907–08 (2d Cir.1991).

■ Bryce does not dispute that the statements in the Johnson–Gomez tape were material, that the declarants were unable to testify, or that the government complied with the Rule's notice requirement. Bryce's objection is that admission of the Johnson–Gomez tape violated the Sixth Amendment's Confrontation Clause and therefore could not be deemed to have advanced the interests of justice. The resolution of this argument is linked to an evaluation of trustworthiness. *See Idaho v. Wright,* 497 U.S. 805, 813–21, 110 S.Ct. 3139, 3145–50, 111 L.Ed.2d 638 (1990) (indicating that under the Confrontation Clause, as under the hearsay rules, courts must evaluate the totality of the circumstances to determine whether a statement contains particular guarantees of trustworthiness that make the declaration especially worthy of belief); *Mingo v. Artuz,* 174 F.3d 73, 77 (2d Cir.1999) ("A court must carefully examine each instance of incriminating hearsay in the light of all the circumstances, taking care to consider all reasonable motivations of the declarant to lie, before concluding that such evidence is so reliable that the defendant had no constitutional right of confrontation."); *United States v. Matthews,* 20 F.3d 538, 545 (2d Cir.1994) (to satisfy Confrontation Clause, statement falling outside firmly rooted hearsay exception must provide such "particularized guarantees of trustworthiness" that "adversarial testing would add little to its reliability") (quoting *Wright,* 497 U.S. at 821, 110 S.Ct. at 3149) (internal quotation marks omitted).

The statements at issue in the Johnson–Gomez tape have a high degree of trustworthiness. As we noted in *Matthews:*

> [O]rdinarily, a confession of an accomplice resulting from formal police interrogation cannot be introduced as evidence of the guilt of an accused, absent some circumstance indicating authorization or adoption. On the other hand, if the statement is made to a person whom the declarant believes is an ally rather than a law enforcement official, and if the circumstances surrounding the portion of the statement that inculpates the defendant provide no reason to suspect that that inculpatory portion is any less trustworthy than the part of the statement that directly incriminates the declarant, the trustworthiness of the portion that inculpates the defendant may well be sufficiently established that its admission does not violate the Confrontation Clause.

20 F.3d at 545–46 (internal citations and quotation marks omitted). Several factors prove particularly relevant in this case: (i) the statements were obtained via a covert wiretap of which neither Johnson nor Gomez was aware; (ii) the statements were made during the same time period that Johnson was conversing with Bryce; (iii) Johnson's statements implicated both himself and Bryce as participants in a narcotics conspiracy; and (iv) Gomez was Johnson's colleague in the narcotics trade. Based on these factors, there is little reason to believe that Johnson and Gomez had any motive to lie, or were lying, during this telephone conversation. *Cf. id.* at 546 (co-defendant's statements implicating defendant in robbery found to be trustworthy because they were volunteered to co-defendant's girlfriend in privacy of own home and implicated both defendants equally in all aspects of crime); *United States v. Rahme,* 813 F.2d 31, 37 (2d Cir. 1987) (trustworthiness indicated in part by fact that even portion that inculpated defendant was against declarant's penal interest). Accordingly, the district court's decision to admit the Johnson–Gomez tape was proper under both Rule 807 and the Confrontation Clause.

## II

■ Bryce argues that the evidence was insufficient to establish guilt under

Count Two of the indictment.[5] In mounting this challenge, he shoulders a "heavy burden." *United States v. Diaz,* 176 F.3d 52, 89 (2d Cir.1999) (citing *United States v. Walker,* 142 F.3d 103, 112 (2d Cir.), *cert. denied,* 525 U.S. 896, 119 S.Ct. 219, 142 L.Ed.2d 181 (1998); *United States v. Desimone,* 119 F.3d 217, 223 (2d Cir.1997), *cert. denied,* 525 U.S. 874, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998)). In assessing whether evidence was sufficient to convict a defendant, we view all of the evidence in the light most favorable to the government and draw all reasonable inferences in its favor. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Diaz,* 176 F.3d 52, 89 (2d Cir.1999). Bryce can succeed only if we conclude that no rational juror could have found the essential elements of possession or distribution beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (citing *Johnson v. Louisiana,* 406 U.S. 356, 362, 92 S.Ct. 1620, 1624–25, 32 L.Ed.2d 152 (1972)).

■ Nevertheless, after a detailed review of the record, we conclude that Bryce has sustained his burden.

**A**

Count Two of the indictment charges possession with intent to distribute, and distribution of, powder cocaine between, on, or about August 5 and 6, 1997:

> Between on or about August 5 and August 6, 1997, in the District of Connecticut, EWAN BRYCE, a/k/a "IAN," the defendant herein, did knowingly and intentionally possess with intent to distribute, and distribute, five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

The prosecution introduced no powder cocaine, residue or paraphernalia; no eyewitness testimony or video surveillance evidence putting Bryce (or someone with him) in possession of cocaine (or any substance resembling cocaine) between, on, or about August 5 and 6, 1997; and no testimony from any persons alleged to have purchased from Bryce between, on, or about August 5 and 6, 1997. The evidence at Bryce's trial primarily consisted of:

● the Bryce–Johnson tapes, in which Bryce says he has cocaine for sale and has already distributed some to others;

● the Johnson–Gomez tape, in which Johnson repeats what Bryce had said;

● the testimony of a Connecticut state trooper, a "drug conversation" expert, who interpreted the Bryce–Johnson tapes to mean that Bryce claimed to have powder cocaine for sale at a price of $22,500 per kilogram;

● the testimony of McCausland that (i) he purchased powder cocaine from Bryce in March and July of 1997 (during the course of the charged conspiracy, but not the period specified in Count Two), and (ii) in July or August of 1997, Bryce claimed to have sold powder cocaine to Johnson in March and July of 1997, "before the wiretaps"; and

● the documentary evidence regarding the cancellation of Bryce's pager and cellular telephone services in late August 1997.

McCausland's testimony is clearly sufficient to establish Bryce's possession and distribution of cocaine in March and July of 1997, "before the wiretaps." However, Bryce was not charged with possession and distribution during either of those two months. Rather, the prosecution charged Bryce with possession and distribution *between, on, or about August 5 and 6, 1997.* McCausland's testimony cannot show that Bryce possessed or distributed cocaine during this period. *See* Fed.R.Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

5. Bryce does not challenge his conspiracy conviction on sufficiency grounds.

Aside from the Bryce–Johnson tapes, the other evidence presented at trial either (i) had no independent significance because it served only to interpret or repeat the Bryce–Johnson conversation; or (ii) was irrelevant to the only inquiry presented by Count Two—whether Bryce possessed and distributed powder cocaine "[b]etween on or about August 5 and August 6, 1997." The Johnson–Gomez tape evidences only that Bryce said what the Bryce–Johnson tapes already record him saying. Similarly, the drug conversation expert's testimony merely interprets Bryce's claims. And the remaining evidence, including the cancellation of Bryce's pager and cellular telephone service soon after the arrests of Johnson and McCausland in late August, is too remote to serve as circumstantial evidence of possession on the relevant dates.

The Bryce–Johnson tapes are thus the only evidence that connects Bryce to cocaine during the specified period. It is clear from those tapes (as interpreted by Johnson and the drug conversation expert) that Bryce claimed to possess a large quantity of powder cocaine, maintained that he had sold or otherwise distributed several kilograms to others, and agreed to sell one kilogram to Johnson for $22,500. Aside from these inculpatory statements, there is no other evidence that Bryce was in possession of cocaine on the dates relevant to the indictment.

At least one other court of appeals has reversed a narcotics possession conviction that was based solely on the defendant's inculpatory statements, without direct evidence of the crime. The Tenth Circuit requires the prosecution to present independent direct or circumstantial evidence of both the identity of the substance and the defendant's possession of that substance: "If the prosecution is not going to present direct evidence of drug possession, its circumstantial evidence must include some testimony linking defendant to an observed substance that a jury can infer to be a narcotic." *United States v. Baggett*, 890 F.2d 1095, 1097 (10th Cir.

1989). Like Bryce, the defendant in *Baggett* was charged with possession of a narcotic substance (there, heroin) on a specified date, but no heroin had been seized. The evidence at her trial also consisted largely of her inculpatory statements: (i) three telephone calls made on that date, all recorded by the police, in which the defendant arranged to purchase narcotics from her dealer later that day; (ii) testimony regarding two surveilled meetings on that same date between the dealer and a woman arriving in a car registered to the defendant, at which neither money nor narcotics was observed changing hands; and (iii) the defendant's confession to law enforcement agents, some four months later, that she had been using narcotics regularly around the date specified in the indictment. *See id.* at 1095–96. The Tenth Circuit refused to uphold the conviction on this evidence, holding that where "the Government fails to seize and analyze the chemical composition of the alleged narcotic substance, there must be enough circumstantial evidence to support an inference that the defendant actually did possess the drugs in question." *Id.* at 1096.

We do not adopt the Tenth Circuit's holding because we decline to give a checklist or formula for sufficiency. A defendant may be convicted of narcotics possession if some evidence—direct, circumstantial, or otherwise—establishes the defendant's possession of the illegal substance. As the Fourth Circuit has noted:

[L]ay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction. Such circumstantial proof may include evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in

the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.

*United States v. Dolan,* 544 F.2d 1219, 1221 (4th Cir.1976) (citations omitted); *see also United States v. Scott,* 725 F.2d 43, 46 (4th Cir.1984) (affirming conviction based on circumstantial evidence of drug possession despite failure of law enforcement to seize substance at issue); *United States v. Gresham,* 585 F.2d 103, 106 (5th Cir.1978) (corroboration of details in a confession can sustain a conviction). We agree with this analysis. Therefore, the key question for purposes of this appeal is whether Bryce's inculpatory statements alone are sufficient to convict him of narcotics possession and distribution.

### B

■■■ It is a long-settled principle that "an accused may not be convicted on his own uncorroborated confession." *Smith v. United States,* 348 U.S. 147, 152, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954). The rule has been extended to require corroboration of a defendant's inculpatory admissions,[6] *see Opper v. United States,* 348 U.S. 84, 91, 75 S.Ct. 158, 163, 99 L.Ed. 101 (1954) (requiring corroboration of "statements of the accused out of court that show essential elements of the crime"); *Smith,* 348 U.S. at 154, 75 S.Ct. at 198 (corroboration rule applies to admissions "to crimes in which there is no tangible *corpus delicti,* where the corroborative evidence must implicate the accused in order to show that a crime has been committed"), including those made outside the interrogation room, *see United States v. Tourine,* 428 F.2d 865, 867–68 (2d Cir.

1970) (applying corroboration requirement to inculpatory admissions made in presence of undercover agent during the commission of the crime).

The modern corroboration requirement originated in the English *corpus delicti* rule, which served the limited function of ensuring that a defendant could not be convicted of a crime to which he had confessed if that crime never occurred.

> In order to convict of serious crimes of violence, then capital offenses, independent proof was required that *someone* had indeed inflicted the violence, the so-called *corpus delicti.* Once the existence of the crime was established, however, the guilt of the accused could be based on his own otherwise uncorroborated confession.

*Smith,* 348 U.S. at 153–54, 75 S.Ct. at 198.

■■■ "[T]he corpus delicti rule no longer exists in the federal system...." *United States v. Kerley,* 838 F.2d 932, 940 (7th Cir.1988). Rather, the modern corroboration rule requires only that there be "substantial independent evidence which would tend to establish the trustworthiness of the statement." *Opper,* 348 U.S. at 93, 75 S.Ct. at 164.

■■■ The corroboration requirement serves a gatekeeping function, preventing juries from convicting defendants on the basis of untrustworthy evidence. The rationale for the requirement is that inculpatory confessions and admissions are frequently unreliable for many reasons, including coercion, delusion, neurosis, self-promotion, or protection of another person. Jurors find such statements inherently powerful, however, and may vote to convict based upon such statements alone. *See, e.g.,* Welsh S. White, *False Confessions and the Constitution: Safeguards Against Untrustworthy Confessions,* 32 Harv. C.R.-C.L. L.Rev. 105, 105 & n.7

---

**6.** Unlike a "strict confession," which the Supreme Court defines as a "complete and conscious admission of guilt," an "admission" is a less-than-complete divulgence of "essential elements of the crime ... necessary to supplement an otherwise inadequate basis for a verdict of conviction." *Opper,* 348 U.S. at 91, 75 S.Ct. at 163.

(1997). The corroboration rule, which is intended to prevent convictions of innocent defendants, also encourages better law enforcement because police and prosecutors cannot rely solely on a defendant's statements to prove a case. As the *Smith* Court explained, the purpose of the corroboration requirement

> is to prevent "errors in convictions based upon untrue confessions alone"; its foundation lies in a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused. Confessions may be unreliable because they are coerced or induced, and although separate doctrines exclude involuntary confessions from consideration by the jury, further caution is warranted because the accused may be unable to establish the involuntary nature of his statements. Moreover, though a statement may not be "involuntary" within the meaning of this exclusionary rule, still its reliability may be suspect if it is extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past. *Finally, the experience of the courts, the police and the medical profession recounts a number of false confessions voluntarily made.* These are the considerations which justify a restriction on the power of the jury to convict, for this experience with confessions is not shared by the average juror.

*Smith,* 348 U.S. at 153, 75 S.Ct. at 197 (emphasis added) (internal quotation marks and citations omitted).

█ For our purposes, declarations of a defendant made in the course of the acts charged as an offense can be divided into two categories—those that bear insufficient indicia of reliability as proof of the defendant's commission of the offense to support a finding of guilt beyond a reasonable doubt, and those that, considering the nature and the context of the defendant's words, demonstrate his commission of the offense so reliably that, without need of other supporting evidence, they can support a finding of guilt beyond a reasonable doubt. Statements in the latter category may be considered self-corroborating. When the prosecution seeks to support a finding of guilt for a possessory offense on the defendant's statements alone, unless they fall into the second category, corroborative evidence is required. If, on the other hand, the defendant's statements, given their nature and context, can support a finding of guilt beyond a reasonable doubt, no further evidence is required. Even dealing with convictions predicated on after-the-fact admissions, the Supreme Court recognized that "[a]dmissions given under special circumstances, providing grounds for a strong inference of reliability, may not have to be corroborated." *Smith,* 348 U.S. at 155 n. 3, 75 S.Ct. at 198 n. 3; *see also Warszower v. United States,* 312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876 (1941) (corroboration of prior inconsistent statement is not required to prove falsity of subsequent statement for which defendant was prosecuted; statements made prior to the crime contain "none of the inherent weaknesses of confessions or admissions after the fact"); *United States v. Simmons,* 923 F.2d 934, 945, 954 (2d Cir.1991) (defendants' admissions to murder "were made to further the ends of [their] criminal enterprise" by intimidating others in their organization; therefore, "it is irrelevant whether their admissions were corroborated by additional evidence.").

Our holding is consistent with conventional rules. A defendant's statement made in a manner and in circumstances sufficient to support a finding beyond a reasonable doubt needs no corroboration. A defendant's statement that does not demonstrate guilt with sufficient reliability is insufficient to support a guilty verdict.

█ Here, Bryce's statements on the wiretaps do not demonstrate his guilt with

the persuasiveness required to stand uncorroborated as the sole evidence supporting his conviction. The fact that Bryce did not know of the wiretap is not enough to forego corroboration. *Cf. Tourine,* 428 F.2d at 867–68 (applying corroboration requirement to inculpatory statements made in presence of person who, unknown to the defendants, was an undercover officer).

Moreover, Bryce's statements raise questions as to whether or not Bryce actually possessed or distributed cocaine on the relevant dates. True, at least twice on August 5 and 6, Bryce seemed to commit himself to selling Johnson some of the cocaine he claimed to possess. But he then either became unavailable to Johnson, or, when pressed, admitted that he did not have the amount he originally claimed. Even after Bryce reluctantly agreed to sell Johnson the last "one" (kilogram of cocaine), the meeting they arranged never occurred, as evidenced by the fact that Johnson called Bryce on August 11 and asked him whether he still had "it." Bryce's statements are fully consistent with, among other things, a deal on spec that Bryce as middleman would fulfill *if he could* from some jobber, wholesaler, or other source.

In short, there is no internal or external indication that, when Bryce told Johnson on August 5 that he possessed "straight," he meant anything more than that he had the ability to sell cocaine. In the circumstances this statement did not permit a jury to conclude beyond a reasonable doubt that Bryce had possession, actual or constructive, in the sense that would permit a conviction for possession with intent to distribute under 21 U.S.C. § 841(a). Having a reliable source from which to obtain cocaine so as to be able to make a sale and delivery is not the same thing as having the cocaine in one's possession. Therefore, we conclude that in the absence of corroboration by independent evidence, Bryce may not be convicted of narcotics possession or distribution on the basis of these inculpatory statements. *See Smith,*

348 U.S. at 156, 75 S.Ct. at 199 ("All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused."); *Opper,* 348 U.S. at 93, 75 S.Ct. at 164 (prosecution required to present "substantial independent evidence which would tend to establish the trustworthiness of the statement"). Without such corroboration—and we see none—Bryce's conviction on Count Two of the indictment cannot be sustained.

## CONCLUSION

Because Bryce's recorded statements did not sufficiently demonstrate his possession of cocaine in a manner that would support a finding of guilt beyond a reasonable doubt, and because there was no corroboration, therefore as a matter of law, the evidence was insufficient to convict Bryce of cocaine possession and distribution. Accordingly, we reverse Bryce's conviction for possession with intent to distribute and distribution (Count Two), affirm the district court's judgment as to Bryce's conspiracy conviction (Count One), and remand for resentencing.

SAND, *District Judge,* concurring in part and dissenting in part:

I dissent from so much of the majority opinion as holds that there was insufficient corroboration to support the conviction on the possession count. The majority cites (slip op. at 349, 356) an August 11 conversation as evidence that no sale occurred on August 6 ("Johnson called Bryce on August 11 and asked him whether he still had 'it.' "). The majority assumes that the "it" refers to the same drugs which were to have been sold on August 6. But the word "still," which is critical to this analysis, nowhere appears in the record of that conversation.

All of the circumstances support the inference that the August 11 conversation

refers to narcotics Bryce received after August 6. The August 11 conversation is evidence only of the fact that Bryce and Johnson continued their drug dealings after August 6. The fact that drug dealers require a rapid turnover of inventory negates the inference drawn by the majority and supports the conclusion reached by the jury and district judge that the August 6th sale was in fact consummated. Accordingly, I respectfully dissent.