13-3805-cr
*United States v. Arroyo*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of January, two thousand fifteen.

PRESENT:

    RALPH K. WINTER,
    JOSÉ A. CABRANES,
    REENA RAGGI,
        *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
        *Appellee,*

    -v.-                                                No. 13-3805-cr

CHARLES ARROYO,
        *Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR DEFENDANT-APPELLANT:**        BRUCE R. BRYAN, Bryan Law Firm, Syracuse, New York.

**FOR APPELLEE:**        DAMIAN WILLIAMS (Justin Anderson, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from an October 2, 2013 judgment of the United States District Court for the Southern District of New York (John G. Koeltl, *Judge*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the October 2, 2013 judgment of the District Court is **AFFIRMED**.

Defendant Charles Arroyo appeals a judgment of conviction from the District Court after a jury found him guilty of distribution and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Count One"). The jury acquitted Arroyo of a second count, discharging a firearm during the commission of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) ("Count Two"). Arroyo then pleaded guilty to a previously severed third count, which charged him with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1) ("Count Three").[1] The District Court sentenced Arroyo on Count One and Count Three principally to 37 months' imprisonment, to be followed by a 5-year term of supervised release.

On appeal, Arroyo identifies purported trial error in the admission of evidence concerning his discharging of a firearm, nearly seven months after he sold the charged cocaine. The evidence included testimony from Peter Gjelaj, a superintendent in the building where Arroyo fired the weapon, and a surveillance video depicting the defendant firing the weapon. Arroyo also contends that Gjelaj's in-court identification was improper and that the District Court should not have permitted him to state that he witnessed Arroyo fire a round on the video. Finally, Arroyo contests the sufficiency of the evidence establishing that the white substance that he distributed was cocaine. We assume the parties' familiarity with the underlying facts and the procedural history of the case.

## DISCUSSION

### I. Other Act Evidence

We review a district court's evidentiary rulings for abuse of discretion, and will not reverse unless the district court's decision was "manifestly erroneous." *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 87–88 (2d Cir. 1999) (internal quotation marks and citation omitted). A district court has "broad discretion" over the admission of evidence. *United States v. Nektalov*, 461 F.3d 309, 318 (2d Cir. 2006). If a district court errs in admitting evidence, harmless error analysis applies in determining whether reversal is required. *United States v. Yousef*, 327 F.3d 56, 156 (2d Cir. 2003). "[O]nly when the court has acted arbitrarily or irrationally" will we reverse an evidentiary ruling. *Nektalov*, 461 F.3d at 318.

We have adopted an "inclusionary" approach to "other act" evidence under Rule 404(b) of the Federal Rules of Evidence, which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity. *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003). In

---

[1] The defendant's activities that underlie the first two counts, and that formed the basis of Arroyo's trial, occurred on September 4, 2011. The third count was severed for trial and pertained to defendant's firing of a single round of ammunition on March 30, 2012.

assessing whether a district court properly admitted other act evidence, we consider whether "(1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004).

Arroyo argues that the District Court erred in admitting at the trial for his September 2011 activities evidence relating to the March 2012 shooting. Specifically, he argues that Gjelaj's testimony regarding the 2012 shooting and the accompanying surveillance video were irrelevant and highly prejudicial as they only serve to highlight criminal propensity. Arroyo further argues that trial counsel did not "open the door" to this evidence by telling the jury that the Government would not produce evidence of a gun in its opening statement and by directly inquiring about the existence of a gun, or lack thereof, during the cross-examination of the police officer who arrested Arroyo in September 2011.

However, evidence that Arroyo possessed a firearm less than seven months after the September 2011 drug sales is certainly relevant to show that he had an opportunity to possess a gun at the time of those sales. *See United States v. Robinson*, 560 F. 2d 507, 513 (2d Cir. 1977) (en banc) (holding that evidence of subsequent possession of a firearm was admissible as "it tended to show [that defendant] had the 'opportunity' to commit the [earlier crime], since he had access to an instrument similar to that used to commit it"). Evidence of the March 2012 incident is especially relevant since defense counsel, in his opening statement, underscored that the jury would not "see a gun" during the trial, J.A. 120—a theme that he returned to during his cross-examination of the arresting police officer. Trial counsel was trying to communicate a simple message to the jury: Arroyo could not have committed the firearm offense in 2011 because he had no access to a gun. The District Court recognized this "implied claim[ ]" and rightly allowed the Government to rebut it with evidence that less than seven months later, Arroyo had access to a firearm. J.A. 191.

Arroyo contends that even if evidence of the March 2012 shooting is relevant, its probative value is substantially outweighed by its prejudicial effect. *See* Fed. R. Evid. 403. But he fails to demonstrate any prejudicial effect of the introduced evidence. Judge Koeltl, in his well-reasoned balancing under Rule 403, noted that evidence of Arroyo shooting a round in the air was not "sensational or an appeal to the jury to convict the defendant on some improper consideration." J.A. 191. Moreover, Judge Koeltl provided a limiting instruction to the jury that ensured against any possible unfair prejudice. Indeed, the fact that the defendant was eventually acquitted of the one count directly relating to use of a firearm, Count Two, underscores both a lack of unfair prejudice arising from the challenged evidence and a lack of error by the District Court in admitting it. Insofar as Arroyo also faults counsel for opening the door to the introduction of the challenged evidence, this clear lack of prejudice allows us to reject the claim on the record before us rather than to await a collateral challenge. *See Strickland v. Washington*, 466 U.S. 668, 691–92 (1984) ("An error by counsel,

3

even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."); *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (stating that deciding ineffective assistance claim on direct appeal "is appropriate when the factual record is fully developed and resolution of the Sixth Amendment claim on direct appeal is beyond any doubt . . . ." (internal quotation marks omitted)).

## II. In-Court Identification

Arroyo argues that the District Court improperly permitted Gjelaj, the building superintendent who witnessed the March 2012 shooting, to identify him at trial. The basis of Arroyo's argument is that the police had previously shown Gjelaj a single photograph of Arroyo.

We review a district court's decision regarding the admissibility of identification evidence for clear error. *United States v. Mohammed*, 27 F.3d 815, 821 (2d Cir. 1994). When a defendant challenges identification testimony given by a witness who has identified him prior to trial, we conduct a two-part inquiry, asking whether (1) the pretrial identification procedures were unduly suggestive and if so, (2) the identification lacks independent reliability. *See Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). To assess reliability, we look to "(1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification. *United States v. Kwong*, 69 F.3d 663, 666 (2d Cir. 1995).

Here, even if we were to resolve the undue suggestiveness question in Arroyo's favor, Gjelaj's testimony had clear independent reliability. Gjelaj told police that he recognized Arroyo as the boyfriend of one of the building's tenants, and testified that he had seen Arroyo in the building several times. Gjelaj had the opportunity to view Arroyo on the television screen at the time of the crime from a safe distance. Gjelaj also provided the police with an accurate description of Arroyo prior to being shown the defendant's booking photograph and was able to identify him with certainty. Finally, only seven hours had passed between when Gjelaj viewed Arroyo discharge his firearm and when he identified Arroyo to the police.

## III. Lay Opinion Testimony

Arroyo argues that Gjelaj should not have been permitted to state his opinion that Arroyo was the man depicted on the surveillance video because the jury was capable of making that determination itself.

Rule 701 of the Federal Rules of Evidence allows lay opinion testimony "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Where the jury is "in as good a position as the witness to draw the inference" to which the opinion relates, the opinion is not helpful and should not be admitted. *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992). By contrast, when an opinion is the result of factors not otherwise possessed by or communicated to the jury, the opinion testimony is likely to be helpful. *See id.*

Here, the District Court acted well within its discretion in determining that Gjelaj's identification of Arroyo as the man in the video was based on factors that the jury did not possess, namely Gjelaj's familiarity with Arroyo's manner of dress, gait, and demeanor observed in Gjelaj's several prior encounters with Arroyo. This court has previously found such insights sufficient to render an opinion helpful to the jury. *See United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005) ("Recognizing that eyewitnesses sometimes find it difficult to describe the appearance or relationship of persons, the atmosphere of a place, or the value of an object by reference only to objective facts, the law permits such witnesses to testify to their personal perceptions in the form of inferences or conclusory opinions.") Accordingly, Gjelaj's opinion was properly admitted under Rule 701.

## IV. Sufficiency of the Evidence

We review Arroyo's challenge to the sufficiency of the evidence supporting his conviction on Count One *de novo*, *United States v. Desposito*, 704 F.3d 221, 226 (2d Cir. 2013), but mindful that he "bears a heavy burden," *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (quotation marks omitted), because we review evidence on a sufficiency challenge "in the light most favorable to the government and draw[] all inferences in favor of the government." *United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003). Moreover, we will uphold a conviction if " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Coplan*, 703 F.3d at 62 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)).

We have previously held that "neither actual drug exhibits nor reports of chemical analysis are required to support a conviction for possession of a controlled substance." *Gaskin*, 364 F.3d at 460. Rather, "[l]ay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction." *United States v. Bryce*, 208 F.3d 346, 353 (2d Cir. 1999) (citation omitted).

Arroyo's insufficiency claim borders on the frivolous. A reasonable jury could have concluded from the testimony of four separate witnesses that Arroyo indeed sold them cocaine on September 4, 2011. These witnesses provided a detailed description of Arroyo's cocaine dealings over a span of six months. The witnesses described the cocaine's physical appearance, used the words "coke" and

5

"cocaine" when purchasing the drugs from Arroyo, and then snorted the white powdery substance. This evidence is clearly sufficient to demonstrate to a rational trier of fact that Arroyo was dealing cocaine.

## **CONCLUSION**

We have considered Arroyo's remaining arguments and find them without merit. Accordingly, we **AFFIRM** the October 2, 2013 judgment of the District Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court