24-2579 (L)
*United States v. Wyche*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of November, two thousand twenty-five.

PRESENT:

> DENNY CHIN,
> RICHARD J. SULLIVAN,
> BETH ROBINSON,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.

No. 24-2579,
24-2581

KEITH WYCHE, ONEIL ALLEN, a.k.a. ALLEN
ONEIL,

*Defendants-Appellants,*

KYRON GRAHAM,
                        *Defendant.*

_____

| | |
|---|---|
| **For Defendant-Appellant Oneil Allen:** | BEVERLY VAN NESS (Natali Todd, Brooklyn, NY, *on the brief*), New York, NY. |
| **For Defendant-Appellant Keith Wyche:** | CARL A. IRACE (Gary Schoer, Syosset, NY, *on the brief*), East Hampton NY. |
| **For Appellee:** | GILBERT M. REIN (Anthony Bagnuola, Irisa Chen, *on the brief*), Assistant United States Attorneys, *for* Joseph Nocella, Jr, United States Attorney for the Eastern District of New York, NY. |

Appeal from judgments of the United States District Court for the Eastern District of New York (Dora L. Irizarry, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 23, 2024 and September 26, 2024 judgments of the district court are **AFFIRMED.**

Keith Wyche and Oneil Allen ("Appellants") appeal from judgments of conviction following a joint jury trial in which they were found guilty of (1) conspiracy to distribute and possess with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846 (Count One); (2) distribution and

possession with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Two); and the distribution of heroin that resulted in the non-fatal overdose of Sarah Wieboldt, in violation of §§ 841(a)(1) and 841(b)(1)(C) (Count Four). Wyche was further convicted of distributing fentanyl that resulted in the overdose death of Vincent Price, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Three). The district court sentenced Wyche to 480 months' imprisonment and Allen to 360 months' imprisonment. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as needed to explain our decision.

## 1. The District Court Properly Allowed Evidence of Uncharged Overdoses.

Allen challenges the district court's admission of evidence related to the uncharged nonfatal overdoses of Vincent Militello and William Maher.[1] We review a district court's evidentiary rulings for abuse of discretion and will disturb a "ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. Williams*, 930 F.3d 44, 58 (2d Cir. 2019) (internal quotation marks omitted). Even if a decision was "manifestly erroneous," we will

[1] Pursuant to Federal Rule of Appellate Procedure 28(i), Wyche and Allen also join and adopt each other's arguments, to the extent such arguments are applicable to their respective convictions.

affirm "if the error was harmless." *United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015) (internal quotation marks omitted).

Appellants contend that the district court erroneously admitted evidence of the two drug overdoses pursuant to Federal Rule of Evidence 404(b), which governs the admissibility of crimes, wrongs, or acts other than those charged in the indictment. But "evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks omitted). Such evidence is admissible as long as it "is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) (internal quotation marks omitted).

Here, the District Court did not abuse its discretion by admitting evidence related to the overdoses of Militello and Maher. The overdoses were not "evidence of other crimes" but rather "evidence of the very crime charged" in the indictment, *United States v. Lyle*, 919 F.3d 716, 736 (2d Cir. 2019) – a conspiracy involving

Wyche and Allen to distribute heroin and fentanyl from February 2017 to September 2018, Allen App'x at 43. The uncharged overdoses demonstrated that Wyche was dealing drugs in July 2017, and that the phone number Wyche used throughout the conspiracy was involved in drug dealing. *See United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989); Allen App'x at 161. The evidence was also used to demonstrate the investigative process that led to the identification of Appellants as drug dealers.

The evidence was also clearly relevant, and its probative value was not "substantially outweighed" by the evidence's prejudicial effect. Fed. R. Evid. 403. It is well established that there is no undue prejudice under Rule 403 where the uncharged conduct did not involve conduct more serious than the charged crime. *See United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *see also United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000). Here, the admission of two non-fatal overdoses were not unduly prejudicial as Appellants were charged with the non-fatal overdose of Wieboldt, and Wyche was charged with the fatal overdose of Price. Moreover, the prejudicial effect of this evidence was tempered by the fact that the parties stipulated that Allen was not involved in the non-fatal overdose of

Maher.  Considering the evidence in context, we cannot say that the district court abused its discretion in admitting evidence of the uncharged overdoses.

## 2. Any Error the District Court Committed in Curtailing Cross-Examination was Harmless.

Appellants next argue that the district court effectively prevented them from cross-examining government witnesses by repeatedly correcting the form of their attorneys' questions and admonishing counsel in front of the jury.  But a district court "is accorded broad discretion in controlling the scope and extent of cross-examination."  *United States v. Sampson*, 898 F.3d 287, 308 (2d Cir. 2018) (internal quotation marks omitted).  And even if we conclude that "the trial judge has improperly curtailed cross-examination," we "apply harmless-error analysis" to determine "'whether, assuming that the damaging potential of the cross-examination were fully realized,' the error was harmless beyond a reasonable doubt."  *United States v. Rosa*, 11 F.3d 315, 336 (2d Cir. 1993) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Although it could be argued that some of the district court's *sua sponte* objections were erroneous, we conclude that any error was harmless, and in most of the instances where the district court improperly curtailed cross-examination, Appellants' defense lawyers were allowed to rephrase their questions to elicit the

intended testimony. *See* Gov't App'x at 110–11, 124. A review of the record reflects that Appellants were still able to fully cross-examine the government's witnesses. And as discussed above, there was ample evidence establishing that Appellants were guilty of the offenses for which they were charged. For these reasons, we conclude that the district court's error was harmless.

### 3. The Evidence Admitted at Trial Was Sufficient to Sustain Appellants' Convictions.

"We review challenges to the sufficiency of evidence *de novo*, and will uphold a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dupree*, 870 F.3d 62, 78 (2d Cir. 2017) (internal quotation marks omitted). "A defendant seeking to overturn a conviction on the grounds that the evidence was insufficient bears a heavy burden." *United States v. Vasquez*, 267 F.3d 79, 90 (2d Cir. 2001) (internal quotation marks omitted). In assessing the sufficiency of the evidence, we "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of

the weight of the evidence." *United States v. Rosemond*, 841 F.3d 95, 113 (2d Cir. 2016) (internal quotation marks omitted).

### a. The Drug Trafficking Conspiracy

"When a defendant challenges the sufficiency of the evidence in a conspiracy case, deference to the jury's findings is especially important" because "a conspiracy by its very nature is a secretive operation." *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (internal quotation marks omitted). "We cannot disturb the jury's verdict if the evidence, viewed in the light most favorable to the government, could have led a reasonable juror to conclude beyond a reasonable doubt," *Rosa*, 11 F.3d at 340, that the defendants "knew the conspiracy existed, intentionally joined it with specific intent to commit the object of the conspiracy, and knew or could reasonably foresee that the conspiracy involved the alleged . . . type of drugs," *Dupree*, 870 F.3d at 78.

Here, there was ample evidence from which a rational jury could find that Appellants knowingly and intentionally participated in the underlying drug conspiracy. Among other evidence, the jury heard Sarah Wieboldt testify that in the summer of 2017, her "two main dealers" were Allen and Wyche, that she would contact Allen or Wyche to purchase heroin by texting a phone number that

they shared, and that at her first transaction with Allen she was not required to use heroin in his presence because Wyche "had already vouched" for her. Gov't App'x at 164–66, 169, 171. Furthermore, NYPD Detective Phillip Vaccarino testified that the Appellants shared vehicles to further the drug conspiracy, and that they were observed outside a house in Somerset, New Jersey (the "Somerset Residence") that was later raided and found to contain thousands of dollars in cash, sifters, grinders, a scale, glassine envelopes, and a customer list. Phones seized from the Somerset Residence contained text messages in which both Appellants discussed the sale of drugs. *Id.* at 268–84. Viewing the evidence in the light most favorable to the government, as we must, we conclude that a "'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

### b. The Wieboldt Overdose.

Wyche argues, for the first time on appeal, that the evidence at trial was insufficient to establish that the substance that caused Wieboldt to overdose was heroin, or that her overdose constituted serious bodily injury as required under 21 U.S.C. § 841(b)(1)(C). Allen asserts that the evidence was insufficient to show that

he aided and abetted the specific drug sale made by Wyche to Wieboldt that caused the overdose.

To convict under section 841(b)(1)(C), the jury was required to find that (1) defendants knowingly or intentionally distributed a substance containing heroin to Wieboldt, and (2) serious bodily injury resulted from the use of that substance. *See* 21 U.S.C. § 841(b)(1)(C). Here, the government introduced sufficient proof that heroin was the substance distributed to Wieboldt on October 27, 2017. We have long recognized that "lay testimony and circumstantial evidence may be sufficient . . . to establish the identity of the substance involved in an alleged narcotics transaction." *United States v. Flores*, 945 F.3d 687, 707 (2d Cir. 2019) (internal quotation marks omitted). Such proof may include evidence "of the physical appearance of the substance," "that the substance produced the expected effects," and that "the substance was used in the same manner as the illicit drug." *United States v. Bryce*, 208 F.3d 346, 353–54 (2d Cir. 1999), *as amended on denial of reh'g* (Jan. 19, 2000) (internal quotation marks omitted).

Wieboldt testified that the substance she purchased from Wyche "looked like a typical bag . . . of heroin," that she felt "very high" after she "sniffed" the substance, and that she overdosed after attempting to sniff a second bag of the

substance. Gov't App'x at 174–75. Phone records indicated that Wieboldt texted Allen requesting "one bundle," a common way to refer to ten bags of heroin. *Id.* at 158–59, 187. And this testimony was corroborated by the government's expert, who testified that heroin is "tannish in color" and that sniffing heroin is one mode of consuming it. *Id.* at 238, 241. This evidence easily permitted the jury to find that Appellants sold Wieboldt a substance containing heroin.

There is also sufficient evidence to establish that the overdose was caused by Appellants distribution of heroin, and that the overdose led to serious bodily injury under section 841(b)(1)(C). Wiebold testified at trial that she purchased heroin from Wyche, sniffed it, and then almost immediately overdosed. *Id.* at 174–75. This chain of events obviously supported the inference that Wieboldt's consumption of heroin was a but-for cause of the overdose, particularly since Wieboldt testified that she did not use any other substances on the day of her overdose. *Id.* at 192.

And the evidence presented at trial was more than sufficient to establish that Wieboldt's overdose constituted a serious bodily injury under the statute, which is defined as bodily injury which involves "a substantial risk of death." 21 U.S.C. § 802(25). Wieboldt testified that she "very quickly stopped breathing" after she

overdosed, that she was revived only after first responders administered Narcan, and that she had to be hospitalized to ensure that she was breathing on her own. Gov't App'x at 159. Based on this testimony, the jury reasonably concluded that Wieboldt faced a substantial risk of death, and thereby sustained serious bodily injury, from the use of heroin.

There was also sufficient evidence to support Allen's conviction on the Wieboldt overdose under an aiding-and-abetting theory. A person is liable for aiding and abetting a crime if he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission. *See Rosemond v. United States*, 572 U.S. 65, 68 (2014). "The affirmative act requirement for accomplice liability raises . . . a low hurdle for the government." *United States v. Delgado*, 972 F.3d 63, 74 (2d Cir. 2020), *as amended* (Sep. 1, 2020). All that is required is that the defendant "facilitated one component" of the offense and provided more than a "minimal amount of aid." *Id.*

As discussed above, there was extensive evidence showing that Allen aided and abetted Wyche's distribution of the heroin that caused Wieboldt's overdose. Allen and Wyche both consistently sold heroin to Wieboldt in the summer of 2017 and used a shared phone number to facilitate drug transactions with her.

12

Wieboldt testified that the Appellants were, through their joint number, "around almost daily," and that the two were more professional in their dealing than other dealers. Gov't App'x at 197–98. From this evidence, a rational trier of fact could have found that Allen aided and abetted the sale of heroin on October 27, 2017 by participating in cultivating Wieboldt as a customer, and transacting in drug sales from the same shared phone number that Wieboldt contacted to arrange for the purchase of drugs that led to her overdose.

### c. The Price Overdose (Wyche Only)

Wyche separately argues that there was insufficient evidence to establish that he sold fentanyl to Vincent Price on April 18, 2017, the day Price fatally overdosed, because the government could not prove that the phone (referred to as the "Marco 5 Phone") used to contact Price belonged to him. Wyche Br. at 22–26. But there was ample evidence from which a rational jury could find that Wyche used the Marco 5 Phone to contact Price.

For starters, Price saved the Marco 5 Phone number under the name "Marco," which was Wyche's nickname in this drug conspiracy. *See* Gov't App'x at 164–66. Text messages were repeatedly sent from the Marco 5 Phone to Price, which matched both the content and pattern of messages sent from a phone seized

13

from Wyche's residence that was also used in the course of the drug conspiracy. *Id.* at 33, 39–40. In addition, the Marco 5 Phone was used to communicate with the same customers as a different phone seized from Wyche's residence. *See id.* at 298, 309. Officer Vaccarino testified that phone records for the Marco 5 Phone led him to surveil John Kane, who later purchased heroin and fentanyl from an unidentified individual driving Wyche's white Jeep. *Id.* at 44–46. And cell-tower location data showed the Marco 5 Phone moving from the vicinity of Wyche's home to Price's residence at the time of the sale on the day that Price died. Wyche App'x 57-59. Viewed in its totality and in the light most favorable to the government, this evidence was more than sufficient to prove that Wyche sold fentanyl to Price on April 18, 2017.

Wyche also argues that there was insufficient evidence to establish that the fentanyl consumed by Price was a "but-for" cause of Price's death. But the jury was presented with ample evidence to establish that Price's use of fentanyl on April 18, 2017 was the "straw that broke the camel's back" and caused his death. *Burrage v. United States*, 571 U.S. 204, 211 (2014). In particular, the jury heard that Price's body was found with a belt tied around his arm, with a hypodermic needle with liquid containing fentanyl next to him. Gov't App'x at 3–8. The jury also

14

heard testimony from experts about the potency and lethality of fentanyl, including that "fentanyl is [fifty] times stronger than heroin" and that "if [a substance] is injected intravenously, the effect is almost immediate." *Id.* at 152, 244. Melissa Pasqual-Styles, a deputy chief medical examiner at the Office of Chief Medical Examiner opined that Price "was alive for a period of time with cocaine and alcohol" in his system, then "t[ook] a terminal shot of fentanyl" that "put[] him over the edge and caused his death." *Id.* at 226. She also testified that the quantity of fentanyl in Price's blood – 24 nanograms per milliliter – was sufficient to "cause [Price's] diaphragm to seize" and to kill him. *Id.* at 225. From this evidence, a rational jury could readily conclude that fentanyl was the but-for cause of Price's death, notwithstanding the other substances already in his body.

**4. Wyche's Sentence was Procedurally and Substantively Reasonable.**

Finally, Wyche challenges the procedural and substantive reasonableness of his 480-month sentence. A sentence is procedurally unreasonable if the sentencing judge "fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [18 U.S.C.] § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Robinson*, 702 F.3d 22,

38 (2d Cir. 2012) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). And a sentence is substantively unreasonable if it "cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) (internal quotation marks omitted).

Wyche argues that his sentence was procedurally unreasonable because the district court's imposition of a 480-month sentence constituted a "*de facto* departure*" for which he did not receive proper notice as required by Fed. R. Crim. P. 32(h). But Wyche's sentence did not fall outside of the authorized guideline range, which was 360 months to life imprisonment. Because Wyche's forty-year sentence fell squarely within the Guidelines range, the district court had no obligation to provide Wyche with notice pursuant to Rule 32(h). Nor was it required to consider the criteria for an upward departure under section 5K2.1 of the Sentencing Guidelines, which permits a district court to go above the Guidelines range where death resulted from the defendant's criminal conduct. Accordingly, we reject Wyche's argument that his sentence was procedurally unreasonable.

Wyche also argues that his forty-year sentence was substantively unreasonable. But a review of the record shows that the district court properly

considered all of the section 3553(a) factors before imposing a within-guidelines sentence. In particular, the district court "considered the nature and the circumstances of the offense in question," noting that fentanyl had become a "real scourge in this country" and that "very few cases get more serious than this one." Wyche App'x at 128–29, 134. The district court also noted that the drug conspiracy had a long list of customers who were frequently targeted to purchase drugs, that the scheme had led to multiple individuals overdosing, including one overdose death, and that Wyche continued to sell drugs even though he was aware that "overdoses were happening from the product that [he] w[as] selling." *Id.* at 130. The district court also properly considered "the history and characteristics of the defendant," 18 U.S.C. § 3553(a), and found it significant that Wyche had several prior drug-related convictions, including convictions for felony drug trafficking and possession of a firearm. Given the severity of the crime and the totality of the circumstances, we cannot say that it was substantively unreasonable for the

17

district court to impose an aggregate sentence of forty years.[2]

For all these reasons, we conclude that Wyche's sentence was not procedurally or substantively unreasonable.

\* \* \*

We have considered Appellants' remaining arguments and conclude that they are without merit.  Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court.

---

[2] To the extent that Wyche argues that his forty-year sentence constituted an unwarranted disparity in light of the thirty-year sentence imposed on Allen, he misreads section 3553(a)(6), which "requires a district court to consider *nationwide* sentence disparities, but does not require a district court to consider disparities between co-defendants."  *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) (emphasis added).  In any event, it cannot be said that the district court abused its discretion in sentencing Wyche to an additional ten-years' imprisonment given that Wyche – unlike Allen – was convicted of distributing the lethal dose of fentanyl that resulted in the overdose death of Vincent Price.